IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

NO. 2:14-CV-39-FL

| | |
|---|---|
| ROBERT CARTWRIGHT and ) | |
| DENISE O. SAWYER, Administratrix of ) | |
| the Estate of Jonathan Sawyer, III, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| TOWN OF PLYMOUTH, NORTH ) | |
| CAROLINA; KENNETH CREQUE; and ) | |
| JOANNE FLOYD ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on motion to dismiss by defendants Joanne Floyd ("Floyd") and Town of Plymouth, North Carolina ("Plymouth"), pursuant to Federal Rule of Civil Procedure 12(b)(6) (DE 16). Pursuant to 28 U.S.C. § 636(b)(1)(B), United States Magistrate Judge Robert T. Numbers, II, entered memorandum and recommendation ("M&R"), wherein it is recommended that the motion to dismiss be granted.[1] Plaintiffs filed objections to the M&R,[2] and defendants Floyd and Plymouth responded. In this posture, the issues raised are ripe for ruling. For the following reasons, the court adopts the M&R and grants the motion to dismiss.

---

[1] The M&R addresses only the motion to dismiss by defendants Floyd and Plymouth (DE 16). A separate motion to dismiss by defendant Kenneth Creque (DE 38), referred to the magistrate judge also for M&R, remains pending and will be addressed by separate order. The clerk is DIRECTED to correct the description of the M&R at docket entry 47 to reflect its application only to the motion to dismiss by defendants Floyd and Plymouth (DE 16).

[2] On March 17, 2015, the court granted plaintiffs' motion to substitute original plaintiff Jonathan Sawyer, III, who died November 24, 2014, with his wife, Denise O. Sawyer, as administratrix of the estate of Jonathan Sawyer, III. The court has amended the caption of this case to reflect the substitution.

## BACKGROUND

Plaintiff Robert Cartwright ("Cartwright") and substituted-plaintiff Jonathan Sawyer, III ("Sawyer"), both former police officers with the Plymouth Police Department, commenced this action on June 29, 2014, against defendant Plymouth; defendant Kenneth Creque, in his personal capacity as former Town Manager of Plymouth; and defendant Floyd, in her official capacity as current Town Manager of Plymouth. Plaintiffs assert that defendants violated their federal constitutional rights in the course of disciplining them and terminating their employment with the Plymouth Police Department. Plaintiffs assert four claims: (1) retaliation for exercise of First Amendment right of freedom of speech, in violation of 42 U.S.C. § 1983, asserted against all defendants, (2) retaliation for exercise of First Amendment right to petition for redress of grievances, in violation of 42 U.S.C. § 1983, against all defendants, (3) denial of equal protection of laws, in violation of 42 U.S.C. § 1983, against all defendants, and (4) wrongful discharge in violation of public policy of North Carolina, against defendant Plymouth.[3]

On August 25, 2014, defendants Floyd and Plymouth filed a motion to dismiss all claims against them for failure to state a claim, under Federal Rule of Civil Procedure 12(b)(6).

On November 10, 2014, defendant Creque filed a motion to dismiss for failure to state a claim, under Federal Rule of Civil Procedure 12(b)(6).

The court stayed scheduling activities in the case pending outcome of the motions to dismiss. The court referred the motion to dismiss by defendants Floyd and Plymouth to the magistrate judge, on November 19, 2014. The court referred the motion to dismiss by defendant Creque to the magistrate judge on January 20, 2015.

---

[3] Plaintiffs voluntarily dismissed a fifth claim for violation of the Fair Labor Standards Act prior to filing of the instant motion to dismiss. (See DE 13).

In the M&R, it is recommended that the court dismiss the federal constitutional claims against defendants Floyd and Plymouth, on the basis that plaintiffs have not alleged that the alleged constitutional violations were the result of an official policy or custom of Plymouth. In addition, it is recommended that the court dismiss the wrongful discharge claim against Plymouth because plaintiffs failed to identify a North Carolina statutory or constitutional provision that was violated by their termination.

**STATEMENT OF FACTS**

The court adopts and incorporates herein the summary statement of facts set forth in the M&R.

A.  Factual Allegations Relevant to Cartwright's Termination

On April 14, 2012, Cartwright was involved in two investigations: one involving a female subject detained by a Tyrell County deputy sheriff for allegedly stealing property from a business within the Town's jurisdiction and a breaking and entering ("B&E") at a Town residence. (Compl. ¶¶ 9-14). In the first investigation, Cartwright did not arrest the female subject. He allowed her to remain in the custody of the deputy sheriff who then charged her with possession of stolen goods and transported her to jail. (Id. at ¶¶ 11-12).

In the second investigation, Cartwright responded to the B&E call with his partner, Officer Muhammad. Officer Muhammad apprehended the alleged perpetrator of the crime several hours later, but Cartwright transported the suspect to the police department. (Id. at ¶¶ 14-16). Officer Muhammad filed the police report on the B&E incident in the computerized reporting system ("Police-Pak"). (Id. at ¶ 19).

When writing the Police-Pak report, Officer Muhammad mistakenly transposed the names of the victims and witnesses. (Id.). Later that morning, when both Cartwright and Muahmmad were headed home after their shifts, Captain Williams of the Town police department called Cartwright and told him "that either [he] or Muhammad need[ed] to return to the [police department] to correct the B&E report." (Id. at ¶ 27). Cartwright attempted to get Muhammad to return to the department to correct the report, but was unable to reach him. (Id. at ¶ 28).

Cartwright then called Investigator Peal, another officer in the police department, and substituted-plaintiff Sawyer, who was Cartwright's immediate supervisor but who was home on leave at the time, to "express unhappiness with the idea he would have to return to [the police department]" and confirm what he regarded as standard practice with respect to correcting such reports. (Id. at ¶¶ 29-31). Sawyer agreed to correct the Police-Pak report on Cartwright's behalf. (Id. at ¶¶ 35, 37).

Cartwright did not return to the police department. Rather, he called Investigator Peal to state that Sawyer had corrected the report. (Id. at ¶ 38). Peal then stated that Officer Muhammad would need to return to the department. (Id. at ¶ 40). Cartwright did not speak to Captain Williams, but concluded that the captain rescinded his original directive to return to the department because Peal, who was in Captain Williams's presence, said that only Muhammad needed to return. (Id. at ¶ 43). Cartwright did not believe that his failure to return to the police department as directed by Captain Williams was insubordination "as it was not the declination of a request or command as the result of a positive intention to disobey." (Id. at ¶ 45). He suggests that this belief was consistent with the Town's employment policy, which defines "insubordination" as a "[r]efusal to accept a reasonable and proper assignment from and authorized superior." (Id.)

On April 23, 2012, Captain Williams notified Cartwright that he would be suspended for two days without pay. (Id. at ¶ 46). Williams provided four grounds for this suspension: a) inaccurate information entered into the B&E incident report; b) failure to follow the chain of command by contacting Sawyer, who was home on medical leave, rather than other members of the chain; c) insubordination for failure to obey Captain Williams's order to return to the police department to correct the mistaken report; and d) mishandling the investigation of the female subject who allegedly stole property by failing to contact the business owners and make an arrest. (Id.)

Cartwright appealed his suspension to the then-Town Manager, defendant Creque, on April 23, 2012. (Id. at ¶ 47). Creque initially denied Cartwright's appeal by letter dated May 10, 2012. In that letter, he upheld all of the allegations of misconduct presented by Captain Williams. (Id.) Cartwright then requested a hearing on the matter, which Creque granted on May 18, 2012.

After the hearing, defendant Creque upheld the suspension and took the additional action of terminating Cartwright's employment. (Id. at ¶ 52). In his findings in support of his decision, Creque determined that Cartwright had not failed to complete incident documents, to follow the chain of command, or to make an arrest in contravention of departmental policy. Creque found that Cartwright had, however, admitted to willfully refusing to follow a directive from Captain Williams and to threatening to resign during the dispute. (Id. at ¶ 50). He also found that Cartwright refused a directive from his appointed supervisor Investigator Peal. (Id.).

The Town's grievance policy governing disputes between employees provides: "Employees subject to this Article shall have the opportunity to be heard without fear of reprisal or retaliation. . . ." (Id. at ¶ 51).

5

B.    Factual Allegations Relevant to Sawyer's Termination

After a period of medical leave, Sawyer sought to return to work with the police department on April 23, 2012 but did not submit the required medical release form. (Id. at ¶ 54). He spent several days negotiating with Captain Williams and the Town's human resources representative about the proper procedure before Williams ordered Sawyer to return to work on April 27, 2012. (Id. at ¶¶ 54-56).

On May 16, 2012, Sawyer attended a meeting with Williams, Chief Steve O'Neal ("Chief O'Neal"), and defendant Creque during which he discussed the dispute over the medical release form. During this meeting, Creque stated that Sawyer had been reported as working for his wife's company in potential violation of the Town's outside employment policy. (Id. at ¶ 58). Sawyer replied that he received no compensation for his work at his wife's business. (Id.). Creque then demanded that Sawyer submit a written request to be able to continue his work in his wife's business, which Sawyer did. (Id. at ¶ 59).

On June 3, 2012, before receiving a reply to his request to continue outside employment, Sawyer was asked by Investigator Peal if he would do a job for a local wrecker company which needed someone to fill-in at the scene of an accident. (Id. at ¶ 60). Sawyer, who had previously worked for a wrecker company, took the job right away. While he was at the scene, Sawyer was photographed by Jennifer O'Neal (the wife of Chief O'Neal), who worked for a competing wrecker company. Ms. O'Neal gave the pictures to Chief O'Neal. (Id. at ¶ 61).

On June 8, 2012, Sawyer received a letter from Creque granting him permission to continue his work with his wife's business under the condition that Sawyer work there only while he was off duty with the police department; that he stay away from the business during duty hours for any

6

reason other than official police business; and that he not "work for, or provide favours [sic] for, friends, or family with their businesses, under any circumstances." (Id. at ¶ 62).

Sawyer contends that other employees with the Town police department had outside employment ranging from working for a funeral home or a gutter business to cleaning cottages at the beach for a realty company. (Id. at ¶ 71). He contends further that these employees were not required to get permission for such employment nor disciplined for having it. (Id.)

After receiving the June 8 letter from defendant Creque, Sawyer approached Town Councilperson Mary Nixon ("Nixon") and showed her the letter from Creque. (Id. at ¶ 63). Sawyer then presented her with two alternate versions of the Town's outside employment policy that he had drafted. (Id.)

On June 21, 2012, Chief O'Neal suspended Sawyer for four days until a pre-disciplinary hearing that would be held on June 25. (Id. at ¶ 65). Chief O'Neal cited four violations of Town policy at this meeting. (Id.) Sawyer was charged with: (1) one count of working at an unreported job, which Sawyer understood to refer to his work for the wrecker company; (2) one count of transmitting confidential information, which Sawyer understood to refer to his entry of a correction to Officer Muhammad's Police-Pak report discussed above; (3) one count of employee harassment, which Sawyer understood to refer to Creque's perception that Sawyer's discussion with Nixon was an effort to coerce Creque into changing his position expressed in the letter from June 8; and (4) two counts of insubordination, which Sawyer understood to refer to violations of Creque's "announcement that Town employees were not permitted to talk to Town councilmembers concerning any administrative policy or policies." (Id. at ¶ 67).

7

At a meeting on July 20, 2012, defendant Creque and Chief O'Neal terminated Sawyer from his employment with the Town police department. (Id. at ¶ 70).

**COURT'S DISCUSSION**

A.  Standard of Review

The district court reviews *de novo* those portions of a magistrate judge's M&R to which specific objections are filed. 28 U.S.C. § 636(b). The court does not perform a *de novo* review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir.1992); see also Edwards v. City of Goldsboro, 178 F.3d 231, 243–44 (4th Cir.1999). A complaint states a claim under 12(b)(6) if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

8

"Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating the complaint, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir.2009) (citations omitted).

B. Analysis

1. Official Capacity Claims

Claims against city officials in their official capacity are in all respects, "[f]or purposes of § 1983, . . . treated as suits against the municipality." Santos v. Frederick Cnty. Bd. of Comm'rs, 725 F.3d 451, 469-70 (4th Cir. 2013). "[A] municipality is subject to Section 1983 liability only when its 'policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [plaintiff's] injury.'" Id. (quoting Monell v. Dept. of Social Services of the City of New York, 436 U.S. 658, 694 (1978)). "[A] municipality . . . cannot be held liable unless a municipal policy or custom caused the constitutional injury." Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 166-67 (1993).

"An official policy often refers to 'formal rules or understandings that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time.'" Semple v. City of Moundsville, 195 F.3d 708, 712-13 (4th Cir. 1999) (quoting Pembaur v. Cincinnati, 475 U.S. 469, 480 (1986)). "While municipal policy is most easily found in municipal ordinances, 'it may also be found in formal or informal ad hoc 'policy' choices or decisions of

9

municipal officials authorized to make and implement municipal policy.'" Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999) (quoting Spell v. McDaniel, 824 F.2d 1380, 1385 (4th Cir.1987)).

"Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985). By contrast, "where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation." Id. at 824.

Plaintiffs do not identify any municipal policy proximately causing their constitutional deprivation. Rather, as determined by the magistrate judge, plaintiffs suggest that the conduct by individual city officials, particularly defendant Creque, was contrary to established town policy. With respect to Cartwright, for example, plaintiffs allege that Creque decided to terminate Cartwright in contravention of the town's grievance policy and contrary to the town's policy definition of insubordination. (Compl. ¶¶ 45, 51-52). In their objections, plaintiffs point to the individual disciplinary and employment actions Creque took against Cartwright, including determination of grounds of suspension, hearing of appeal, modification of grounds for suspension, and termination. (See Compl. ¶¶ 46-52). Plaintiffs do not allege, however, any plausible basis upon which such individual disciplinary and employment actions were caused by an "existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." Tuttle, 471 U.S. 823-24.

10

With respect to Sawyer, plaintiffs argue that defendant Creque "created a new outside employment policy that he tendered to Sawyer on 8 June 2012." (Obj. at 1). Reliance on this purported policy as a basis for plaintiffs' official capacity claims is problematic in several respects. As an initial matter, the complaint does not state that Creque created a new employment policy, but rather that <u>despite</u> the town's existing outside employment policy, "Creque demanded that Sawyer submit a written request to be able to continue uncompensated work for his wife's business." (Compl. ¶ 58). As such, plaintiffs suggest in the complaint that Creque made a demand upon Sawyer in contravention of town policy, not in accordance with it.

In addition, even if Creque's single decision with respect to Sawyer can be characterized as "ad hoc" policy decision, plaintiffs do not allege that such individual conduct was "caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." <u>Tuttle</u>, 471 U.S. at 823-24; <u>see</u> <u>Crowley v. Prince George's County</u>, 890 F.2d 683, 685 (4th Cir.1989) (holding that, although a county police chief was authorized to make a final personnel decision, he did not have "final policymaking authority" that would impute liability for racial discrimination to the county under 42 U.S.C. § 1981).

While Creque "may have discretion to hire and fire employees," this exercise of decisionmaking authority is not sufficient to impute liability to the town on the basis of a single such decision, unless Creque is also the municipal official "responsible for establishing [town] employment policy." <u>Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro</u>, 64 F.3d 962, 966 (4th Cir. 1995). Under state law, Creque was the chief administrative officer of Plymouth, but final policy-making authority was vested in the town council. <u>See</u> N.C. Gen. Stat. § 160A-148(1) (authorizing town manager to terminate employees "in accordance with such general

11

personnel rules, regulations, policies, or ordinances as the counsel may adopt"); N.C. Gen. Stat. § 160A-164 (authorizing town counsel to adopt personnel rules and "personnel policies, and any other measures that promote the hiring and retention of capable, diligent, and honest career employees").

Thus, plaintiffs have not alleged any basis for imputing liability for conduct of defendant Creque to defendants Plymouth or Floyd. Therefore, plaintiffs' federal constitutional claims against in their official capacities must be dismissed.

2.  Wrongful Discharge

Plaintiffs contend that their claim for wrongful discharge in violation of public policy "rise and fall with" their federal constitutional claims. (DE 31 at 11). Given that the federal constitutional claims against Plymouth and Floyd must be dismissed, so also must plaintiffs' claim for wrongful discharge be dismissed against Plymouth. Further, to the extent plaintiff suggests that a wrongful discharge claim can be maintained against Plymouth, on the basis of federal constitutional violations committed by Creque in his personal capacity, the court finds no basis in North Carolina law for allowing such a wrongful discharge claim to proceed. See Amos v. Oakdale Knitting Co., 331 N.C. 348, 353 (1992) (holding that public policy is violated when an employee is fired in contravention of express policy declarations contained in the North Carolina General Statutes); cf. McDonnell v. Guilford Cnty. Tradewind Airlines, Inc., 194 N.C. App. 674, 680 (2009) (holding that federal regulations are "not sufficient to constitute an express statement of our public policy").

**CONCLUSION**

Based on the foregoing, the motion to dismiss by defendants Floyd and Plymouth (DE 16) is GRANTED. The motion to dismiss by defendant Creque (DE 38) remains pending and will be

12

addressed by separate order. As set forth herein, the clerk is DIRECTED to correct the description of the M&R (DE 47) to reflect its application only to the motion to dismiss by defendants Floyd and Plymouth (DE 16).

SO ORDERED, this the 26th day of March, 2015.

_____
LOUISE W. FLANAGAN
United States District Judge